# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28 (4) (c), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS AUTHORITY IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

# Supreme Court of Kentucky



2005-SC-0726-WC

DATE 7-6-06 ~~~~~~~~~~~

RICKY DIXON                                                                    APPELLANT

V.
APPEAL FROM COURT OF APPEALS
2005-CA-0620-WC
WORKERS' COMPENSATION NO. 03-84588

DON AMBURGEY PLUMBING; HON.
JOHN B. COLEMAN, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                                                            APPELLEES

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

An Administrative Law Judge (ALJ) dismissed the claimant's application for workers' compensation benefits on the ground that he was an independent contractor rather than an employee. The Workers' Compensation Board and the Court of Appeals affirmed. Appealing, the claimant maintains that the ALJ failed to consider all of the relevant criteria set forth in Ratliff v. Redmon, 396 S.W.2d 320 (Ky. 1965), and that the evidence compelled a finding that he was an employee. We affirm.

The claimant was born in 1959. He completed high school, was certified as a welder, and was licensed for boiler installation. He testified that he was self-employed as a welder from 1976 to 2003. He also testified that for the last five or six years he had worked for Don Amburgey Plumbing about 90% of the time. When he was off for

brief periods while a crew changed locations, he would either work in his father's welding shop or perform small jobs. When Amburgey called him, he would report for the next job immediately. He stated that he earned $35.00 per hour, worked an average of 40 hours per week, and was paid weekly. He used his own tools but also used Amburgey's grinders and hand tools. Amburgey provided the welding rods. He stated that he worked the same hours as others who worked for Amburgey and was not free to come and go as he wished. On cross-examination, he acknowledged that no taxes were withheld from his pay and that he did not receive paid vacation. Nonetheless, he considered himself an employee the entire time that he worked for Amburgey.

The claimant alleged that he injured his back when he pulled on a piece of pipe while working for Amburgey at the Perry County Justice Center on April 28, 2003. He testified that he completed the remaining two welds and went home because there was no further work to do until the pipe was pressure tested. He acknowledged that he did not inform Amburgey of the injury when asked if he was finished for the day. The next morning, he sought treatment at the emergency room for back pain. About a week or a week and a half later, his daughter drove him to Amburgey's office to complete an accident report. He denied having any contact with Amburgey during the period between the accident and the day he went to the office.

When deposed on March 25, 2004, Don Amburgey testified that he had been a self-employed mechanical contractor for 24 years and owned Don Amburgey Plumbing. The company's primary work was to provide institutional plumbing, heating, hydronic pipe, sheet metal, and HVAC equipment. He generally employed from 35 to 50 individuals but no full-time welders. Early in 2003, Amburgey employed a full-time

welder at $15.00 per hour, but he laid the man off in the spring due to insufficient demand. He explained that about 60% of the company's projects required welding but that he needed a welder for only about 5% of a project.

Amburgey testified that he began a business relationship with the claimant about five or six years earlier to provide pressure pipe welding on a job-to-job basis. The claimant provided his own welding truck and most of his tools. Amburgey would obtain items the claimant did not have and replace tools that broke on the job. He stated that the claimant could come and go as he pleased. He submitted a weekly invoice for his services and was paid $35.00 per hour, from which nothing was withheld. Amburgey provided a Form 1099 for tax reporting purposes. He stated that the claimant worked side-by-side with Amburgey employees and was under the supervision of the pipefitters, but he considered the claimant to be a sub-contractor. Amburgey stated that he attempted to hire the claimant on two occasions but that he declined, preferring to work for $35.00 per hour rather than $15.00. He testified that sometimes he had to wait for the claimant to become available because he also worked for other companies. Several times he had missed work due to back problems. Amburgey introduced invoices from Dixon Welding Services for the period from December 23, 2002, through April 28, 2003, totaling $8,190.00. On cross-examination, he acknowledged that the invoices might not have represented all of the hours that the claimant worked and also that the company had kept him "pretty busy" the past two to three years.

Amburgey testified that the claimant asked him for a job after welding at the Perry County Justice Center was finished but that he had no other work for him to do at that time. On May 10, 2003, the claimant telephoned him at home to report that he injured his back while working on April 28. On May 12, the claimant came to the office

and prepared an injury report. Amburgey acknowledged that he had no record the claimant carried workers' compensation insurance and that he did not require him to do so.

After reciting an extensive summary of the evidence, the ALJ listed the nine Ratliff v. Redmon, supra, factors, noting that four were dominant. Uninsured Employers' Fund v. Garland, 805 S.W.2d 116 (Ky. 1991). The ALJ then analyzed the evidence as follows:

> In this instance, the evidence indicates that the alleged employer was engaged in commercial institutional plumbing, heating, hydraulic [sic] pipe, sheet metal and HVAC equipment in large structures. According to the employer, he would need the specialty skills of a welder to make up approximately 5% of each total project. While each project may be in need of a welder, he testified that he did not have enough work to keep a full time welder as an employee. Further, the evidence indicates that the defendant did not exercise a great deal of control over the plaintiff as the plaintiff was free to leave when his welding work was completed and was not limited to a set working time as were other employees. The plaintiff would simply submit invoices for the time he worked each week which would be paid by the defendant. As a welder, the plaintiff clearly had a professional skill which was not available to most laborers. The skill was developed to such a point that the plaintiff utilized his own welding truck and welder on the jobs given to him by the defendant herein. When looking at the true nature of the intent of the parties, it becomes clear that the parties intended an independent contractor relationship to exist rather than that of an employee. While the plaintiff did subcontracting welding work for the defendant-employer for multiple years, the evidence does indicate that the plaintiff was free to do other jobs and the defendant would sometimes have to wait for the plaintiff to complete other jobs before being able to hire his services. The plaintiff utilized his own truck and welder and would be free to leave the job site as soon as his welding was completed. The bills were paid by invoice on a weekly basis with no deductions, benefits, or vacation days accumulated. Perhaps, the most clear indication comes from Mr. Don Amburgey's testimony . . . that he had attempted to hire the plaintiff as an employee, but the offer was rejected by the plaintiff. The plaintiff was paid $35.00 an hour for his specialized work where the employees who did welding earned $15.00 an hour. The plaintiff's pay was also always provided on a

-4-

1099 tax form at the end of each year rather than a W-2. From this evidence, it is clear the parties intended an independent contractor relationship to exist and therefore, I find for the defendant on this issue. With that finding, the remaining issues become moot.

As set forth in Ratliff v. Redmon, supra, the nine factors to be considered when determining whether an individual is an employee or independent contractor are: 1.) the extent of control that the alleged employer may exercise over the details of the work; 2.) whether the worker is engaged in a distinct occupation or business; 3.) whether the type of work is usually done in that locality under the supervision of an employer or by a specialist, without supervision; 4.) the degree of skill required by the work; 5.) whether the worker or alleged employer supplies the instrumentalities, tools, and place of work; 6.) the length of the employment; 7.) the method of payment, whether by the time or the job; 8.) whether the work is a part of the regular business of the employer; and 9.) the intent of the parties.

The Ratliff v. Redmon test was later refined, in Chambers v. Wooten's IGA Foodliner, 436 S.W.2d 265, 266 (Ky. 1969), to focus primarily on four of the nine factors: 1.) the nature of the work as related to the business generally carried on by the alleged employer; 2.) the extent of control exercised by the alleged employer; 3.) the professional skill of the alleged employee; and 4.) the true intentions of the parties. In a subsequent case, the court noted that all of the Ratliff v. Redmon, supra, factors must be considered but that treating the role of the alleged employee's work in relation to the regular business of the employer as the predominant factor in the analysis fulfills the theory of risk spreading upon which workers' compensation is based. Husman Snack Foods Co. v. Dillon, 591 S.W.2d 701, 703 (Ky. App. 1979), citing Larson, Larson's Workmen's Compensation Law, § 43.51 (1978).

Most recently, in Uninsured Employers' Fund v. Garland, supra, the court addressed the issue of control over the details of work, noting that in Ratliff v. Redmon, supra, the court had relied upon Professor Larson's treatise for the principle "that the control of the details of work factor can be provided by analysis of the 'nature of the claimant's work in relation to the regular business of the employer.'" (Emphasis original). Uninsured Employers' Fund v. Garland, supra, 805 S.W.2d at 118, citing Ratliff v. Redmon, supra, 396 S.W.2d at 325. Furthermore, citing to the decisions in Chambers v. Wooten's IGA Foodliner, supra, and Husman Snack Foods Co. v. Dillon, supra, the court emphasized that at least the four primary factors must be considered and that a proper legal conclusion could not be drawn from only one or two factors. Id. at 119.

In summary, since Ratliff v. Redmon, supra, the employer/independent contractor analysis has evolved into three major principles: 1.) that all relevant factors must be considered, particularly the four set forth in Chambers v. Wooten's IGA Foodliner, supra; 2.) that the alleged employer's right to control the details of work is the predominant factor in the analysis; and 3.) that the control factor may be analyzed by looking to the nature of the work in relation to the regular business of the employer. UEF v. Garland, supra; Husman Snack Foods Co. v. Dillon, supra.

The claimant asserts that the ALJ failed to consider all of the relevant factors. Moreover, the facts on which the ALJ based the findings regarding three of the four predominant factors were clearly erroneous. Focusing on the favorable evidence, he argues that it compelled findings that Amburgey's business required a full-time welder, that Amburgey maintained control over his work, and that the parties intended for him to be an employee.

Although the claimant complains that the ALJ failed to make specific findings regarding all of the Ratliff v. Redmon factors, he failed to petition for reconsideration in order to request the findings that he asserts were required. Therefore, the assertion is not properly preserved for appeal. Eaton Axle Corp. v. Nally, 688 S.W.2d 334 (Ky. 1985). In any event, the findings that the ALJ made were more than adequate to permit a meaningful appellate review. See Big Sandy Community Action Program v. Chaffins, 502 S.W.2d 526 (Ky. 1973); Shields v. Pittsburgh and Midway Coal Mining Co., 634 S.W.2d 440 (Ky. App. 1982). It is apparent that the ALJ conducted a thorough review of the evidence, including testimony by the claimant and Don Amburgey, and correctly stated the applicable law.

The burden was on the claimant to prove every element of his workers' compensation claim, including his status as an employee. Roark v. Alva Coal Corporation, 371 S.W.2d 856 (Ky. 1963). KRS 342.285 designates the ALJ as the finder of fact with the sole authority to weigh the evidence; therefore, it is within the ALJ's discretion to determine the quality, character, and substance of evidence. See Paramount Foods, Inc. v. Burkhardt, 695 S.W.2d 418 (Ky. 1985). In doing so, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. Caudill v. Maloney's Discount Stores, 560 S.W.2d 15, 16 (Ky. 1977). Stated otherwise, where the evidence is conflicting, it is for the ALJ to choose whom and what to believe. Pruitt v. Bugg Brothers, 547 S.W.2d 123 (Ky. 1977). A finding against the party with the burden of proof may not be reversed on appeal unless the favorable evidence was so overwhelming that it compelled a finding in the party's favor. Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986); Paramount Foods, Inc. v. Burkhardt, supra.

In the present case, the ALJ was persuaded that the claimant was an independent contractor. In doing so, the ALJ relied on evidence that welding is a specialized skill, that it comprises a very small percentage of the work on Amburgey's projects, that the claimant was free to leave a worksite when he finished welding, that he used his own welding truck and welder when working for Amburgey, that he was free to do other jobs when Amburgey had no work, that he submitted invoices for his time, that he was paid without deductions and received no vacation time, that he received a Form 1099 rather than a W-2 for tax purposes, and that he received $35.00 per hour when an employee welder would have received $15.00 per hour. Although the claimant points to evidence that would have supported a favorable finding, he has failed to show that the ALJ misunderstood any relevant evidence or that the ALJ's conclusions were unreasonable under the weight of the evidence. See Special Fund v. Francis, supra. Moreover, he has failed to show that the ALJ misapplied the law. Under such circumstances, the decision may not be disturbed on appeal.

The decision of the Court of Appeals is affirmed.

Lambert, C.J.; and Cooper, Johnstone, Roach, Scott, and Wintersheimer, JJ., concur. Graves, J., dissents by separate opinion.

COUNSEL FOR APPELLANT:

Edmond Collett, PSC
Monica Rice Smith
21975 Main Street
PO Box 1810
Hyden, KY 41749

COUNSEL FOR APPELLEE,
DON AMBURGEY PLUMBING:

Gerald Vanover
Jones, Walters, Turner & Shelton PLLC
151 N Eagle Creek Drive
One Fountain Plaza, Suite 310
Lexington, KY 40509

# Supreme Court of Kentucky

## 2005-SC-0726-WC

RICKY DIXON                                                    APPELLANT

V.
APPEAL FROM COURT OF APPEALS
2005-CA-0620-WC
WORKERS' COMPENSATION NO. 03-84588

DON AMBURGEY PLUMBING; HON.
JOHN B. COLEMAN, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                                            APPELLEES

## DISSENTING OPINION BY JUSTICE GRAVES

As I recently expressed in my dissenting opinion in Lowes # 0507 v. Greathouse, 182 S.W.3d 524, 527 (Ky. 2006) (Graves, J., dissenting), I believe this Court has veered too far away from the underlying intent and purpose of the Workers' Compensation Act. Once again an injured worker has been erroneously excluded from his rightful entitlement to compensation under the Act. Accordingly, I must respectfully dissent.

Possessing a high school education, a 6G welding certification, and a boiler installation license, Appellant worked steadily as a welder for about twenty-seven (27) years. During the last five or six years of employment, Appellant worked almost exclusively for Appellee. The majority concedes that Appellant was given a choice on at least two occasions – to be classified as an employee and take home less pay or be

classified an independent contractor and take home more pay. Understandably, Appellant wanted to be classified as an independent contractor in order to have more disposable income, which would result from being able to evade withholding for all taxes (income, social security, and payroll), as well as any necessary wage adjustment to cover the employer's cost of worker's compensation insurance for an employee. Appellant and Appellee were *pari dilecto* in this precarious arrangement, pursuant to which Appellee evaded the employer's statutory contribution for FICA taxes and circumvented other requirements of the law. The majority appears content with Appellant's choice and the resulting consequences of that choice.

The philosophy behind workers' compensation encompasses more, however, than the worker's amount of disposable income or his preference for what he would like to be called. When evaluating the options a society has when confronted with a disabled worker, Professor Larson, former Under Secretary of Labor and author of Larson's Workers' Compensation Law, describes three options. First, society could refuse all aid and leave the worker to his own devises, to starve or beg in the street depending on the severity of his disability. Second, society could put the worker on some form of government relief and force the cost of maintaining him on society as a whole. Third, and the choice made by the Worker' Compensation Act, society can place the cost of supporting the injured worker on industry, which will ultimately transmit this cost to the consumer through higher prices. This third option contains some of the same loss-spreading advantages of the second option, with the additional advantage of only spreading the loss among those who would reap the benefits of industry.

Professor Larson states that the purpose of the ultimate social philosophy of workers' compensation is:

> [T]he belief of the wisdom of providing, in the most efficient, most dignified and most certain form, financial and medical benefits for the victims of work-related injuries which an enlightened community would feel obligated to provide in any case in some less satisfactory form, and of allocating the burden of these payments to the most appropriate source of payment, the consumer of the product.

Larson's Workers' Compensation Law, § 1.03[2] at 1-5 (Matthew Bender 1999). Similarly, this Court noted in Zurich American Insurance Company v. Brierly, 936 S.W.2d 561, 563 (Ky. 1996), "[a]lthough both the employee and the employer have rights under the Act, the primary purpose of the law is to aid injured or deceased workers."

This Commonwealth has long recognized the economic wisdom behind the social altruism of workers' compensation. Such philosophy was applied in Husman Snack Foods Company v. Dillion, 591 S.W.2d 701 (Ky. App. 1979), where the Court of Appeals held that, because the consumer should bear all the costs of the industry, any worker whose services are a "regular and continuing part of the cost of the product, and whose method of operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can be channeled, is within the presumptive area of intended protection." Id. at 703; see also, Apex Mining v. Blankenship, 918 S.W.2d 225, 229 (Ky. 1996) ("[W]e are also mindful that the Worker's Compensation Act is social legislation to be construed liberally and in a manner consistent with accomplishing the legislative purpose."). Looking at the facts of this case, it is clear that the Act's long recognized philosophy and legislative purpose was surely meant to include Appellant.

In their joint effort to frustrate the costs and requirements of modern social legislation, Appellant and Appellee had a somewhat flexible working arrangement.

-3-

Appellant worked for Appellee nearly 90% of the time and took time off only when Appellee's work waned. It is undisputed that Appellant was absolutely dependent upon Appellee for the bulk of his income and that Appellant worked other jobs only when Appellee was unable to employ him. Appellant's work as a welder was an integral part of Appellee's business as it was acknowledged that 60% of the company's projects required welding work. Moreover, Appellant testified that he was not free to come and go as he pleased, but rather he worked the same hours and had the same breaks as Appellee's other employees. Appellant further testified that while he was working for Appellee, he never worked for someone else and he never cut his work short to go work on another job. Finally, when Appellant did work another job during times he was laid off from Appellee, he would return immediately upon being called back to employment by Appellee.

"[A] proper Ratliff v. Redmon[, 396 S.W.2d 320 (Ky. 1965)] analysis require[s] a consideration of all four factors." Purchase Transp. Services v. Estate of Wilson, 39 S.W.3d 816, 818 (Ky. 2001). Both the ALJ and the Court of Appeals erroneously based the bulk of their determination on only one factor - that Appellant made a choice to work for higher wages, and thus, he must have intended to take on the risk associated with independent contractors. However, "an employer cannot by contrivance force an employee to work outside the protection of the Workers' Compensation Act, even if the employee acquiesces in the employer's terms." Husman Snack Foods Co., supra, at 703. Furthermore, "in a contract of hire the name adopted by the parties to describe their relationship is ordinarily of very little importance as against the factual rights and duties they assume." Duke v. Brown Hotel Co., 481 S.W.2d 289, 290 (Ky. 1972).

When the four primary factors set forth in Ratliff, supra, are considered and

weighed in their entirety, Appellant's claim should not have been rejected. The right to control details of the work is the primary test used by courts to determine employee or independent contractor status. Larson, supra, § 60.03 at 60-5. Although Appellant may have had specialized skills and supplied some of his own equipment, he was controlled and directed by Appellee, along with Appellee's other employees, when performing nearly all of his assigned tasks. Professor Larson also notes that the power to dismiss a worker is synonymous with the right to control the worker. "The absolute right to terminate the relationship without liability is not consistent with the concept of independent contract, under which the contractor should have the legal right to complete the project contracted for and to treat any attempt to prevent completion as a breach of contract." Larson, supra, § 61.08 at 61-22. In this case, Appellant was paid on an hourly basis and did not independently negotiate specific jobs or projects. Moreover, the evidence clearly implies that Appellee had the right to terminate Appellant at any time.

This case is not unlike the facts in Purchase Transp. Services, supra. In that case, the parties entered into an agreement to lease a cab for the purpose of providing taxi service. Id. at 817. In exchange for providing liability insurance, maintenance, and licenses for the leased cab, the worker agreed to be responsible for "personal, medical, and any other desired insurance." Id. In the course of determining that the worker was an employee and not an independent contractor, the Court specifically found that "[a]lthough the *parties agreed that the decedent was an independent contractor*, [the employer] set the decedent's schedule; it dispatched all her calls; [and] it set the rates she could charge to customers." Id. at 819 (emphasis added); see also, Brewer v. Millich, 276 S.W.2d 12 (Ky. 1955) (Millich, a cutter, was an employee for compensation

-5-

purposes even though he had several of his own employees, and had signed a contract which declared him to be an independent contractor and which specified a quantity of work to be completed by a specified date). This case is similar in the fact that Appellee set Appellant's schedule, determined the extent and scope of Appellant's work, and set the rate in which Appellant would be compensated. Neither Appellant nor Appellee has denied that he made this arrangement for financial consideration or suggested that Appellant's work would have been substantially different if he had chosen to take on the work under the label of employee.

As it was said and done in Brewer, supra, this case calls for the Court to "look to the substance [of the agreement] rather than the shadow." Id. at 16. Under these circumstances, contract labor does not equate to independent contractor. An employment relationship was created and existed. Virtually, Appellant may be independent. In reality, he was no more independent than any other at-will employee in Kentucky. Accordingly, I dissent.